

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-14-2007

# Wang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4713

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Wang v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1481.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1481

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 05-4713

———

XIU FEI WANG,
                            Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                            Respondent

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A78-387-915)
Immigration Judge:  Hon. Eugene Pugliese

———

Submitted Under Third Circuit LAR 34.1(a)
March 8, 2007

Before: SLOVITER and AMBRO, <u>Circuit Judges</u>, and POLLAK,[*] <u>District</u> <u>Judge</u>

———

OPINION

———

SLOVITER, <u>Circuit Judge</u>

---

[*] Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Xiu Fei Wang petitions for review of the order of the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ") denying Wang's application for asylum under section 208(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(a), and withholding of removal under § 241(b)(3) of the INA, 8 U.S.C. § 1232(b)(3). We will deny the petition.

I.

Wang, a 14-year-old female, who is a native and citizen of the People's Republic of China, entered the United States on October 12, 2002 without entry documents. The Department of Homeland Security initiated removal proceedings against Wang by issuing a Notice to Appear, dated March 19, 2003. At a hearing on September 18, 2003 before the IJ, Wang admitted the allegations and conceded the charge – as such, the basis for her removability was established.

Wang filed a Form I-589, "Application for Asylum and for Withholding of Removal" with the IJ within a year of her entry to the United States. Wang's claim rests on two grounds: first, that she has an imputed political asylum claim arising out of her mother's forcible sterilization while pregnant with Wang; second, that she has a political asylum claim based on past persecution to her family because of her parents' violation of China's one-child policy and a well-founded fear of future persecution on the same basis.

According to Wang[1], after the birth of her oldest sister in 1986, Wang's mother hid

---

[1]Wang concedes that most of the alleged persecution that occurred to her happened before or shortly after she was born.

from the authorities and avoided sterilization at the urging of Wang's grandmother, who wanted a grandson. In 1988, Wang's mother became pregnant a second time and was able to keep the pregnancy secret. Wang stated that her mother did not go to the hospital at the time, "because the doctors would have arranged for sterilization at the same time," and Wang's grandmother continued to pressure Wang's mother to have a male child. App. at 49. Following the birth of Wang's second sister, the county authorities received notice of the birth of the second child and required that Wang's parents pay a fine in the amount of approximately $968 for violating China's one-child policy. Wang's mother nevertheless refused to be sterilized and went to live in a relative's house to escape sterilization. Wang stated that in retaliation for the fact that the county officers could not locate her mother, they confiscated items of the family's personal property, smashed doors and windows, and destroyed furniture.

Wang's mother became pregnant with Wang in 1989. Wang believes that while her mother was pregnant, Chinese authorities sought her out in order to "abort the pregnancy and sterilize her." Id. Unable to find Wang's mother, the authorities arrested Wang's grandmother and imprisoned her. Wang's parents then reported to the authorities in order to secure the release of Wang's grandmother. According to Wang, her mother was then sterilized during the sixth month of the pregnancy while Wang was in the womb.[2] Nonetheless, Wang was carried to term and she has alleged no injury physically

_____

[2]Wang submitted the declaration of a medical doctor in New York averring that an abdominal scar that he examined on Wang's

3

or otherwise arising from this incident. Not only was Wang's mother sterilized, but she was also fined approximately $1,937 for violation of the one-child policy.

Wang stated that her parents sought to emigrate to the United States in 1994 because they were under severe financial stress due to the hardships applied by the authorities. Wang's mother's asylum claim was denied on July 22, 2002.

Wang and her two sisters remained in China with her grandmother, who Wang stated was difficult to live with because she resented the girls and wanted a grandson. Wang stated that the authorities required her parents to pay double tuition as a penalty for their violation of the one-child policy. Wang's parents eventually paid to have all three daughters smuggled into the United States; only Wang was apprehended. Wang alleged that if she were forced to return to China she would face future persecution based on her family's violation of China's one-child policy and her speaking out against the policy. Further, she stated that she feared economic persecution in the form of greatly increased tuition fees.

After an evidentiary hearing, the IJ denied Wang's applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"),[3]

---

mother was "consistent with a mini-laparotomy done for sterilization," and that the "scar's length and location are specific and unique for sterilization done in the second trimester." App. at 106.

[3] Wang has waived her claim under the CAT by failing to raise the issue in her brief. See Chen v. Ashcroft, 376 F.3d 215, 221 (3d Cir. 2004).

4

on May 27, 2004. The IJ held that Wang failed to "establish any legal principle under which the respondent would herself be eligible for asylum." App. at 14. The BIA affirmed without opinion the IJ's decision. Wang timely filed this petition for review.

II.

Where the BIA summarily affirms the decision of the IJ, we review the decision of the IJ. See Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003) (en banc); Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). In deciding whether an applicant qualifies for asylum or withholding of removal, this court reviews the IJ's factual determination under the substantial evidence standard. Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004); Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001). Under this standard, the IJ's finding must be upheld unless "the evidence not only supports" a contrary conclusion, "but compels it." INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992); see also Chang v. INS, 119 F.3d 1055, 1060 (3d Cir. 1997).

To qualify as a "refugee" who may receive asylum, an alien must establish that she is unable or unwilling to return to her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Elias-Zacarias, 502 U.S. at 481 (internal quotation marks and citations omitted).

To establish "past persecution" and entitlement to asylum, an applicant must show: (1) an incident, or incidents, that constituted persecution; (2) that occurred on account of one of the statutorily protected grounds; and (3) were committed by the government or

5

forces the government is either unable or unwilling to control. <u>Berishaj v. Ashcroft</u>, 378 F.3d 314, 323 (3d Cir. 2004). An asylum "applicant can demonstrate that she has a well-founded fear of future persecution by showing that she has a genuine fear, and that a reasonable person in her circumstances would fear persecution if returned to her native country." <u>Gao</u>, 299 F.3d at 272. Lastly, the threshold for establishing eligibility for withholding of removal is even higher than that for establishing entitlement to asylum and requires the petitioner to demonstrate a "clear probability" that, upon deportation to the country of origin, "her life or freedom would be threatened on account of one of the statutorily enumerated factors." <u>Senathirajah v. INS</u>, 157 F.3d 210, 215 (3d Cir. 1998).

The definition of persecution, as stated by this court and the BIA, includes "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." <u>Fatin v. INS</u>, 12 F.3d 1233, 1240 (3d Cir. 1993); <u>see also</u> <u>Matter of Acosta</u>, 19 I. & N. Dec. 211, 222 (B.I.A. 1985). Therefore, "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." <u>Fatin</u>, 12 F.3d at 1240.

Congress has provided that "a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program" is "deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42)(B). "Similarly, a person who has a well-founded fear that he will be subject to such procedures or will be subject to persecution for resisting such procedures

6

is 'deemed to have a well founded fear of persecution on account of political opinion.'" Wang v. Gonzales, 405 F.3d 134, 139 (3d Cir. 2005) (quoting 8 U.S.C. § 1101(a)(42)(B)).

This court, in combination with the BIA, has established a clear set of principles for purposes of interpreting 8 U.S.C. § 1101(a)(42)(B). In Wang, 405 F.3d at 143, we denied the petition for review filed by a child whose parents violated China's one-child policy when his sister was born three years after his birth. His parents were fined 20,000 yuan, a sum equal to 100 times the family's lowest estimated monthly salary. Id. at 136. The family fled the village but later received permission to pay the fine on an installment basis. Id. "Nevertheless, the government repeatedly subjected the Wang family household to property destruction and harassment because the fine remained unpaid." Id. In 1996, the government forcibly sterilized petitioner's mother and completely destroyed the family home. Id. at 140. Notwithstanding the horrors visited upon petitioner's family, we found that "the authorities' intrusions into the family's life had their limitations as neither [petitioner] nor his sister had any trouble attending school, and the authorities never arrested, detained or fined [him]. Accordingly, it is clear that the authorities did not direct the actions at [him]." Id. at 136.

Wang sought to sustain his claim for relief by relying on the BIA's decision in In re C-Y-Z, 21 I. & N. Dec. 915, 918 (B.I.A. 1997), that the applicant husband could establish eligibility for asylum by virtue of his wife's forced sterilization. In Wang, we distinguished the BIA's holding in C-Y-Z, holding that "a child . . . is not a spouse." 450

7

F. 3d at 143. We stated, "whereas a husband has a direct interest in whether his wife can have additional children, a child is in a very different position as the family planning policies as applied to his parents can affect him only as a potential sibling and not as a parent." Id. We reasoned that inasmuch as we had previously held in Chen v. Ashcroft, 381 F.3d at 225-27 that "the BIA's interpretation of INA § 101(a)(42)(B) not to reach unmarried partners was reasonable," the decision in Wang to deny a potential sibling asylum was more than justifiable, as "his interest in the birth of a child to his parents is more remote than that of a parent, married or not." Wang, 405 F.3d at 143. It is clear then that although a spouse can prove persecution on the basis of political opinion, a child cannot.

Wang argues that her situation differs from that of the applicant in Wang because she was in her mother's womb when the forcible sterilization occurred. The IJ was not persuaded: "The Court does not believe that the principle announced by the Board in Matter of C-Y-Z should be extended to other members of the family. . . . [Asylum] is not a derivative type of benefit in a sense that the persecution of a family member is the persecution of the applicant, who happens to be related to that family member." App. at 12. The IJ stated that C-Y-Z merely stands for the proposition that because husband and wife are both part of the procreative process, "if either of those partners is deprived of the opportunity to procreate obviously it substantially impacts on the other partner's ability to have children." App. at 13.

We agree. The fact that Wang was in utero at the time of her mother's forcible

8

sterilization, standing alone, is not enough for Wang to surmount this court's holding in

Wang that children are not entitled to relief merely on the basis of persecution to their

parents for the latter's violation of the one-child policy. The facts of this case are

indistinguishable from those in Wang. As we stated in Wang, "for the child to be

persecuted he must show that the persecution threatened his "life or freedom[.]" 405 F.3d

at 144. Wang has made no showing that she was physically or emotionally affected by

her mother's forcible sterilization while she was in utero. Therefore, Wang cannot prove

persecution on account of political opinion, nor can she prove persecution on any of the

other statutorily enumerated bases. The economic persecution suffered by her family,

while deplorable, did not rise to the level of that even in Wang. Accordingly, we will

deny the petition for review.